UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NICOLE L. VERMEYLEN, on Behalf of
Herself and a Class of Persons Similarly
Situated,

       Plaintiff,

v.                                    Case No. 06-12327

PROQUEST COMPANY, ALAN. W. ALDWORTH,    HONORABLE AVERN COHN
KEVIN G. GREGORY, TODD W. BUCHARDT,
RANDY BEST, DAVID G. BROWN, MICHAEL
GELTZEILER, TODD NELSON, WILLIAM E.
OBERNDORF, LINDA G. ROBERTS, JAMES P.
ROEMER, GARY L. ROUBOS, FREDERICK J.
SCHWAB, DAVID BONDERMAN, WILLIAM J. WHITE,
JOHN H. SCULLY, and DOES 1 through 50,

       Defendants.

_____/

## MEMORANDUM AND ORDER GRANTING
## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

I. Introduction

This is a case under the Employment Retirement Income Security Act ("ERISA"),

29 U.S.C. § 1001 et seq. claiming breach of fiduciary duty.  Plaintiff Nicole L.

Vermeylen, on behalf of herself and all persons similarly situated,[1] is suing defendants

ProQuest Company (ProQuest) and several individuals over the inclusion of ProQuest

stock as an investment option in ProQuest's retirement plan which plaintiff says suffered

a serious decline and which resulted diminished participant benefits.  This is one of

_____

[1]Although plaintiff seeks class action status, no class has been certified.

several cases before the Court involving the decline of ProQuest's stock price following negative corporate news on February 9, 2006 which resulted in an approximate 18% drop and continued decline.[2]

Before the Court is defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction (standing) and for failure to state a claim under Fed. R. Civ. P. 2(b)(6).[3]  For the reasons that follow, the motion is GRANTED because plaintiff lacks standing.[4]  Even if plaintiff were to prevail on her theory of her case, she would not benefit financially since she is not a participant within the meaning of ERISA and suffered no loss as a result of defendants' alleged fiduciary breaches.

## II.  Background

The relevant facts as gleaned from the complaint and parties papers follow:[5]

### A.  The Amended Complaint

On May 23, 2006, plaintiff filed a Class Action Complaint for Violations of ERISA.

---

[2]The Court also has before it a securities action, In re ProQuest Securities Litigation, case no 06-10619 and two shareholder derivative actions:  Fringer v. Aldworth, 06-11845 and Bricker v. Aldworth, 06-15648.

[3]The Court is constrained to observe that neither party complied with the local rule regarding type size which requires in part that "type size for all text and footnotes must be no smaller than 10 characters per inch (non-proportional) or 12 point (proportional)."  E.D. Mich. LR 5.1(a).  Defendants' footnotes were in a smaller type size and plaintiff's entire paper appears to be in a smaller type size.

[4]This decision is limited to defendants' Rule 12(b)(1) defense.

[5]The Court may look to matters outside the pleadings, particularly where there is a challenge to jurisdiction.  See United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994) (holding a court may take evidence in considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1)); Rankin v. Rots, 278 F., Supp. 2d 853, 857 n. 8 (E.D. Mich. 2003) (considering plan documents in connection with a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

On October 16, 2006, plaintiff filed an Amended Class Action Complaint for Violations of

ERISA.  (Amended Complaint).  Defendants, and their respected roles are as follows:

> ProQuest Company
> Alan W. Aldworth - CEO and President
> Kevin G. Gregory - CFO
> Todd W. Buchardt - Senor Vice President and General Counsel
> Randy Best - Director since March 2005
> David G. Brown - Direct since January 1994
> Michael Geltzeiler - Director since September 2004 and
> member of Audit Committee
> Todd Nelson - Director since January 2004
> William E. Oberndorf - Director since July 2004
> Linda G. Roberts - Director since January 2004
> Lames P. Roemer - Chairman of the Board from January 1998
> through May 2004 and Director since February 1995; CEO and
> President from February 1997 to January 2003
> Gary L. Roubos - Director since February 1994
> Frederick J. Schwab - Director since September 1994
> David Bonderman - Director during the Class Period
> William J. White - Director during the Class Period
> John S. Scully - Director during the Class Period
> John Does 1 - 50

The Amended Complaint, running 290 paragraphs and 84 pages, makes the following

claims against all of the defendants:

| | |
|---|---|
| Count I | Breach of fiduciary duties by designating ProQuest Stock as an Investment Option and Permitting the Plan to Invest in ProQuest Stock |
| Count II | Failure to Prudently and Loyally Manage the Assets of the Plans, - Breaches of Fiduciary Duty in violation of ERISA § 404 |
| Count III | Failure to Monitor the Plan and Provide Accurate Information - Breaches of Fiduciary Duties in Violation of ERISA § 404 |
| Count IV | Failure to Monitor the Plan and Provide the Administrators of the Plan and Other Fiduciaries with Accurate Information - Breaches of Fiduciary Duties in violation of ERISA § 404 |
| Count V | Failure to Provide Complete and Accurate Information to the Plans Participants and Beneficiaries - Breaches of Fiduciary Duties in Violation fo ERISA §§ 404 ad 405 |
| Count VI | Failure to Act exclusively in the Interests of Participants in the Plan - Breaches of Fiduciary Duties in Violation fo ERISA §§ 404 and 405 |

Count VII  Defendants, other than the Trustee,[6] are Liable as Co-Fiduciaries for the Breaches of Fiduciary Duties by the Other Defendants
Count VIII Prohibited Transactions In Violation of ERISA § 406
Count IX  Breach of Fiduciary Duty of Loyalty to Avoid Conflict of Interest under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A)

Plaintiff says that defendants breached their fiduciary duties beginning on February 13, 2003 when ProQuest issued the first of several press releases that falsely portrayed its earnings.  After that. ProQuest published other information in the form of, inter alia, 10-K reports which allegedly contained false and materially misleading information.  Plaintiff says that the "truth" was revealed on February 9, 2006 when ProQuest issued a press release indicating that its income and accrued royalty accounts "are materially understated" and that its prepaid royalty account is "materially overstated."  On this news, plaintiff says that ProQuest's stock "collapsed" to as low as $21.90 per share, closing at $24.19 per share, and has continued to drop, trading as low as $11 per share.  The"Class Period" is defined as "February 2003 through the present."

As defendants accurately state, "the gravaman of the Amended Complaint is that the defendants allowed Plan participants to choose to invest individual account assets in the ProQuest Stock Fund even though defendants allegedly knew that it was an "imprudent investment."  Plaintiff says that she, and others similarly situated Plan participants and beneficiaries suffered a diminution of her vested benefits as a result of the February 2006 drop in the stock price.

---

[6]The identity of the "Trustee" is not clear from the complaint.

4

B.  The Plan

The ProQuest Profit Sharing Retirement Plan (the Plan)[7] is an "employee pension benefit plan" governed by ERISA and constitutes an "individual account plan" under ERISA.  Each Plan participant has an individual account.  ProQuest is the Plan sponsor and Plan Administrator.  It appointed a third party trustee to administer the Plan trust fund.  Participating employees may contribute a certain percentage of their qualified compensation to the individual accounts.  The Plan has a variety of investment options from which participants can chose.  ProQuest was responsible for selecting investment options with one exception:  the Plan was required to offer a ProQuest Stock Fund which was required to invest in ProQuest stock.  See Plan at § 8.6 ("One such investment shall be designated as the [ProQuest] Stock Fund] (the "Stock Fund"), and shall be invested primarily in shares of common stock of [ProQuest]").  Each participant has full discretion to invest their contributions as they see fit.  Unlike other ERISA plans involved in similar litigation, the Plan has no matching employer contribution solely in company stock nor does the Plan require that a participant invest in ProQuest stock.  However, for participants electing to invest in ProQuest stock, the Plan caps the amount of a participant's investment at 25% of their account balance.  During the Class Period, the ProQuest Stock Fund comprised less than 2% of the Plan assets.  On December 31, 2005, the ProQuest Stock Fund represented only 0.68% of total Plan assets.

III.  Legal Standards

---

[7]The Plan was established by Bell & Howell Company.  After Bell & Howell was renamed ProQuest Company on June 6, 2001, the Plan was amended to substitute the name "ProQuest" for the name "Bell & Howell."

5

"For purposes of ruling on a motion to dismiss for lack of standing, a complaint must be viewed in the light most favorable to the plaintiff; all material allegations of the complaint must be accepted as true." Am. Fed'n of Gov't Employees v. Clinton, 180 F.3d 727, 729 (6th Cir. 1999).   The plaintiff, as the party invoking federal subject matter jurisdiction, has the burden of persuading the court that all of the requirements necessary to establish standing to bring the lawsuit have been met. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (explaining that the party invoking federal jurisdiction has the burden of establishing the three elements that constitute the "irreducible constitutional minimum of standing").

IV.  Analysis

A.  Standing

Defendants say that plaintiff lacks Article III and statutory standing because she sold her ProQuest Stock three years before the February 2006 drop in price and because she was not a participant in the Plan as of November 16, 2005, approximately six months before the complaint was filed.

1.

Constitutional standing to sue is an aspect of Article III's case-or-controversy requirement. Northeastern Fla. Chapter, Assoc. Gen. Contractors of Am. v. Jacksonville, 508 U.S. 656, 663-64 (1993).  Under Supreme Court and Sixth Circuit precedent standing "is to be determined as of the time the complaint is filed." Id. at 524. " '[J]urisdiction is tested by the facts as they existed when the action [was] brought' ... 'after vesting, it cannot be ousted by subsequent events.' " Id. (quoting Smith v. Sperling, 354 U .S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1 (1957)).  "To satisfy Article III's

6

standing requirements, a plaintiff must show: '(1) it has suffered an 'injury in fact' that is

(1) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant;

and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by

a favorable decision.' " Cleveland Branch, NAACP v. City of Parma, Ohio, 263 F.3d

513, 523-24 (6th Cir. 2001) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,

528 U.S. 167, 180-81 (2000)).

The Court has previously explained the requirements of ERISA standing as

follows:

> To have standing to sue under ERISA § 502(a), a plaintiff must be a "a
> participant, beneficiary, or fiduciary" of a plan. 29 U.S.C. § 1132(a) (2000). A
> "participant" is defined by ERISA as "any employee or former employee of an
> employer ... who is or may become eligible to receive a benefit of any type from
> an employee benefit plan which covers employees of such employer." 29 U.S.C. §
> 1002(7) (2000).  "In order to establish that he or she [is eligible or] 'may become
> eligible' for benefits, a claimant must have a colorable claim that (1) he or she will
> prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in
> the future."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18, 109
> S.Ct. 948, 103 L.Ed.2d 80 (1989).
>
>         The Court of Appeals for the Sixth Circuit, however, has made clear that
> "[i]n determining who is a 'participant,' for purposes of standing, the definition
> found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts
> of standing, not in the context of adjudicating the ultimate issue of the merits of
> the plaintiffs' claim.... Thus, while the Supreme Court's definition of 'participant' in
> Firestone guides our standing analysis, it is not necessarily dispositive." Swinney
> v. General Motors Corp., 46 F.3d 512, 518 (6th Cir.1995) (citations omitted). The
> court of appeals also stated that along with a majority of circuits, [we] have
> developed an exception to the general rule that a person who terminates his right
> to belong to a plan cannot be a "participant" in the plan. Specifically, if the
> employer's breach of fiduciary duty causes the employee to either give up his
> right to benefits or to fail to participate in a plan, then the employee has standing
> to challenge that fiduciary breach.  Otherwise, a fiduciary could defeat an
> employee's standing to bring an ERISA action by duping him into giving up his
> right to participate in a plan. ERISA should not be construed to permit the
> fiduciary to circumvent his ERISA-imposed fiduciary duty in this manner. .... The
> enforcement provisions of ERISA were meant to provide the full range of legal

7

and equitable remedies available in both state and federal courts and to remove
jurisdictional and procedural obstacles which in the past appear to have
hampered effective enforcement of fiduciary responsibilities under state law or
recovery of benefits due participants." Swinney, 46 F.3d at 519 (citations
omitted).

Rankin v. Rots, 220 F.R.D. 511, 519-20 (E.D. Mich. 2004).

2.

a.

Plaintiff was employed by ProQuest as a Resource Team Manager from January
20, 1997 to October 27, 2005.  She enrolled in the Plan and made her first contribution
on February 2, 1997.  On December 31, 2001, her account held approximately 28.5
units (shares) of the ProQuest Stock Fund, with a value of $337.59.  She later took
loans and withdrawals which reduced the value of her investment.  Effective May 2,
2003, plaintiff withdrew all of her ProQuest Stock Fund assets.  After that date, her Plan
assets were held solely in other funds.  Plaintiff left her employment with ProQuest on
October 27, 2005.  She received a rollover distribution of her entire account balance on
$2,510.78 on November 16, 2005.  After that date, she was no longer a Plan participant.

b.

Plaintiff argues that she has standing under ERISA because "she has a colorable
claim that she will be entitled to additional vested benefits if she prevails on her breach
of fiduciary duties claim."  She further says that the fiduciary breaches she alleges
resulted in fewer assets in the Plan while she was a participant.  She also argues,
relying on Rankin, that the fact she is no longer a participant does not prevent her from
filing suit under ERISA.  Finally, she argues that she has Article III standing because as
a participant she can under ERISA for other equitable relief, such as restitution and

8

disgorgement, citing <u>Chao v. Hall Holding Co., Inc.</u>, 285 F.3d 415 (6th Cir. 2002).

None of these arguments are persuasive.

### 3.

### a.

First, plaintiff's argument that she will be entitled to additional vested benefits

lacks merit. The authority upon which plaintiff relies for the proposition that former plan

participants may sue under ERISA where they are seeking additional vested benefits is

distinguishable. The cases she cites involves the situation where a former participant

alleges that the stock was <u>undervalued</u> because of alleged breaches of fiduciary duty at

the time the former participant redeemed their company shares. ." <u>See</u> <u>Olson v. Chem-</u>

<u>Trend, Inc.</u>, 1995 WL 866221 (E.D. Mich. May 30, 1995) (former plan participant

redeemed company shares for $126.58 in accordance with an audit; seven months

later, the company was sold and other participants' shares were redeemed fro $270 per

share; plaintiff alleged breach of fiduciary duty because he was paid "substantially less

than [the] fair market share"); <u>Kuper v. Quantum Chemical</u>, 829 F. Supp. 918 (S.D. Ohio

1993) (former plan participant alleged final plan distribution was than the true value of

their vested benefits because of defendants' fiduciary breaches, i.e. they did not receive

"everything due them under the Plan).

Plaintiff also relies on the Department of Labor's amicus brief filed in <u>Harzewski</u>

<u>v. Guidant Corp.</u>, No. 06-3752 (7th Cir.), which involves an appeal from the district

court's decision in <u>In re Guidant ERISA Litigation</u>, 2006 WL 2828882 (S.D. Ind. Sept.

15, 2006), dismissing a complaint for lack of standing. Such reliance is misplaced.

<u>Harzweski</u> involves the situation where "defendants' alleged fiduciary breaches [which]

9

caused the loss to the plan before [the plaintiffs] took benefit payouts."  The plaintiffs in

that case seek an upward adjustment to their vested benefit payouts.

Here, plaintiff does not allege that she failed to receive the true value of her

ProQuest stock when she sold it in May 2003 or that she did not receive "everything due

to [her]"under the Plan.  Plaintiff here sold her stock at a time where she says it was

"artificially high."  She does not allege that defendants' conduct caused losses to the

Plan before she took all of her benefit payouts or that her vested benefits should be

higher.  As defendants' state: "[t]here is not even a remote possibility that plaintiff

herself could have been affected by the drop in ProQuest's stock price, when she had

long since sold all of her Company stock."  Defendants' reply brief at p. 5.  Plaintiff is

not, and cannot, claim that her interest in ProQuest stock, which she eliminated from

her account well before the drop, should be upwardly adjusted.  In short, if plaintiff's

allegations are to be believed, she actually benefitted from cashing out her ProQuest

stock when she did.

b.

Second, plaintiff is not "virtually identical" to the plaintiff in Rankin.  In Rankin, the

named plaintiff, Quincie Rankin, was a plan participant and owned company stock when

she filed her complaint.  A year after the complaint was filed, Rankin received a

distribution from the Plan.  Moreover, she claimed that, consistent with the case law

discussed above, that the fiduciary breaches which occurred while she owned the

company stock, caused her vested benefit to decline, and any recovery "would likely

affect the amount of [her] benefit.

Here, by contrast, as stated, plaintiff sold all of her ProQuest stock in May of

10

2003 and received a full distribution of her account on November 15, 2005, well before

the February 2006 drop.  She had no "vested benefit" in the Plan, much less ProQuest

stock, at the time of the drop or when she filed the complaint.

c.

Plaintiff's argument, relying on <u>Chao</u>, <u>supra</u>, to establish she has Article III

standing, also fails.  Plaintiff spent the majority her time at the hearing on April 18, 2007

arguing that <u>Chao</u> establishes her right to bring suit under ERISA, pointing out that

ERISA provides for equitable remedies in the face of statutory and common law

violations for breach of fiduciary duty obligations.  In <u>Chao</u>, the Secretary of the

Department of Labor sued defendants, administrators of an employee stock ownership

plan, alleging that they had breached fiduciary duty under ERISA in connection with

establishment of the plan.  The primary issue before the Sixth Circuit was whether the

district court erred in finding, on summary judgment, that defendants breached their

fiduciary duties under ERISA § 406(a), 29 U.S.C. § 1106(a), which prohibits certain

types of transactions between a plan and a party in interest.  The facts in <u>Chao</u> describe

a classic case of over-reaching by a fiduciary engaged in self-dealing.  The decision

does not discuss standing under either Article III or ERISA.  Nor does the decision

discuss equitable relief under ERISA, such as restitution or disgorgement.  As such,

<u>Chao</u> does not provide authority for plaintiff's claim of standing.

d.

Contrary to plaintiff's protestations to the contrary, plaintiff's situation is not unlike

that of one of the plaintiffs in <u>Loren v. Blue Cross and Blue Shield of Mich.</u>, 2006 WL

11

2228978 (E.D. Mich. Aug. 3, 2006) (unpublished).  In <u>Loren</u>, three plaintiffs brought a class action lawsuit against Blue Cross and Blue Shield of Michigan (BCBSM) claiming breach of fiduciary duties under ERISA relating to its negotiation for allegedly more favorable rate payments for its Blue Care Network plan versus other plans it administers, including the American Axel Plan.  One of the plaintiffs was a participant in the American Axel plan at the time the complaint was filed, but later withdrew from the plan and was no longer a participant in a plan administered by BCBSM.  The district court found that because he was no longer a participant and therefore had no interest in the relief available under ERISA.  Here, plaintiff is no longer a participant in the ProQuest plan, having taken her full share of vested benefits well before the complaint was filed and before the alleged breaches of fiduciary duty.  She therefore has no interest in the relief available under ERISA which must "inure[e] to the benefit of the plan as whole" not the benefit of individual participants.  <u>Massachusetts Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 144 (1985).

Plaintiff's circumstance is akin to cases in which courts have found a lack of standing where the participant has taken a final distribution of vested benefits.  <u>See</u> <u>Bona v. Barasch</u>, 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003) (unpublished) (plaintiffs who were dismissed for lack of standing did not have a vested benefit and did not have any future eligibility to receive any benefits regardless of whether the defendants breached their fiduciary duties; <u>Renton v. Kaiser Found. Health Plan, Inc.</u>, No. C00-5370, 2001 WL 1218773 (W.D. Wash. Sept. 24, 2001) (unpublished) (holding that "under the plain language of ERISA's civil enforcement provisions, class members who are former, but not current participants in a ... plan lack standing to bring the claims

12

alleged in the complaint." ).

e.

Finally, to the extent that plaintiff relies on general principles of trust law as support for her right to file suit, arguing that she need not suffer an actual injury and that injury to the Plan alone is sufficient, such reliance is misplaced.  This argument still presupposes that the plaintiff be a "participant" under ERISA.  As explained above, plaintiff is not a participant.

B.  Other Arguments

Having concluded that plaintiff lacks standing, the Court lacks subject matter jurisdiction to resolve the claims in the case.  The Court therefore declines to reach defendants' alternative arguments as to whether plaintiff has failed to state a claim upon which relief may be granted.

SO ORDERED.

<u>s/Avern Cohn</u>
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  April 23, 2007

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, April 23, 2007, by electronic and/or ordinary mail.

<u>s/Julie Owens</u>
Case Manager, (313) 234-5160

13